UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE _____

| | |
|---|---|
| SOFTWARE BROKERS OF AMERICA, INC., d/b/a INTCOMEX,<br><br>     Plaintiff,<br><br>     v.<br><br>UNITED STATES,<br><br>     Defendant. | Court No. 25-00381 |

## **COMPLAINT**

Plaintiff, Software Brokers of America, Inc. d/b/a Intcomex (Intcomex) by and through its attorneys the Law Office of Stephen Tosini and Gunster, Yoakley & Stewart, P.A, allege as follows:

1. Intcomex is a family-owned business organized and existing under the laws of the State of Florida with its principal place of business located at 10310 NW 121st Way, Medley, Florida. Intcomex began in 1989 as a distributor of software products in South Florida and has grown into the leading platform for technology distribution and value-added solutions across Latin America and the Caribbean. Its two consolidation centers in free trade zones in Florida and Panama serve 41 countries. Intcomex makes most of its United States imports into free trade zones for re-export.

2. This action concerns Intcomex's importation into the United States of six entries of Bluetooth speaker systems manufactured in Hong Kong by JBL.

3. The defendant is the United States, through U.S. Customs and Border Protection (CBP). CBP is responsible for classifying merchandise imported into the United States under the

Harmonized Tariff Schedule of the United States (HTSUS) and collecting duties on imported merchandise.

## THE SUBJECT ENTRIES AND PROTESTS

4.      This action challenges CBP's liquidation of six entries of Bluetooth speakers and assessment of a 20 percent tariff under the International Emergency Economic Powers Act (IEEPA), despite the fact that each entry was shipped from its port of origin before February 1, 2025, and entered the United States at the Port of Miami on March 5, 2025, and thus, was entitled to enter free of the IEEPA tariff under the in-transit exclusion.

5.      The six entries: 231-3428199-4; 231-3428201-8; 231-3428197-8; 231-3428191-1; 231-3428200-0; and 231-3428190-3, were each loaded onto the GSL Sofia in China and shipped on January 9, 2025, and entered the United States on March 5, 2025.

6.      CBP liquidated the six entries on May 16, 2025, and issued duty bills at the rate of 20 percent pursuant to IEEPA.

7.      Intcomex submitted six protests to CBP on June 13, 2025, contesting the assessment of the IEEPA tariff.  The protests were numbered 520125103841 through 520125103846.  CBP denied the protests on July 1, 2025.[1]

## JURISDICTION AND STANDING

8.       This action arises under 19 U.S.C. §§ 1514(a)(2) & (3), to contest CBP's classification and the rate and amount of duties chargeable upon liquidation of Intcomex's Bluetooth speakers as further described in this Complaint.

_____

[1]  Intcomex has re-exported all merchandise imported under the six subject entries.

9.     This Court possesses exclusive jurisdiction to entertain this action under 28 U.S.C. § 1581(a), because Intcomex has commenced this action to contest the denial of a protest under section 515 of the Tariff Act of 1930, 19 U.S.C. § 1515.

10.     In accordance with 28 U.S.C. § 2636(a), this action was timely commenced within 180 days after CBP denied Intcomex's protests.

11.     Intcomex has standing to bring this action pursuant to 28 U.S.C. § 2631(a) because it is the importer of record of the subject merchandise and the party whose protests, filed under 19 U.S.C. § 1514, against the classification of such merchandise at liquidation, was denied by CBP.

12.     Intcomex has paid all liquidated duties, taxes and fees before commencement of this action.

## THE ASSESSMENT AND CLAIM

13.     At liquidation, CBP determined that the six entries were not entitled to treatment as in-transit merchandise even though they were exported before the President's imposition of the IEEPA tariff and entered the United States before expiration of the in-transit exclusion.

15.     President Trump, in *Executive Order 14195 of February 1, 2025*, 90 Fed. Reg. 9,121 (Feb. 5, 2025), initially proclaimed a 10 percent tariff on merchandise from China, Mexico, and Canada, but excluded from the tariff merchandise that was in-transit to the United States as of February 1, 2025:

> goods entered for consumption, or withdrawn from warehouse for consumption, after such time that were loaded onto a vessel at the port of loading or in transit on the final mode of transport prior to entry into the United States before 12:01 a.m. eastern time on February 1, 2025, shall not be subject to such additional duty, only if the importer certifies to U.S. Customs and Border Protection within the Department of Homeland Security as specified in the Federal Register notice.

To implement *Executive Order 14195*, the President directed the Secretary of Homeland Security to make "modifications to the HTSUS through notice in the Federal Register." *Id.*

14.    In its notice in the Federal Register implementing the President's imposition of the IEEPA tariff, CBP created HTSUS subheading 9903.01.23 for importers certify in-transit merchandise as free of the IEEPA tariff. The "Article Description" for subheading 9903.01.23 in its entirety excluded from the tariff products loaded onto a vessel at the port of loading before February 1, 2025, and entered before March 7, 2025:

> Except for products described in headings 9903.01.21 and 9903.01.22, and other than products for personal use included in accompanied baggage of persons arriving in the United States, articles the product of China and Hong Kong that: **(1)** were loaded onto a vessel at the port of loading, or in-transit on the final mode of transport prior to entry into the United States, before 12:01 a.m. eastern standard time on February 1, 2025; and **(2)** are entered for consumption, or withdrawn from warehouse for consumption, on or after 12:01 a.m. eastern standard time on February 4, 2025, and before 12:01 a.m. eastern standard time on March 7, 2025.

*Implementation of Additional Duties on Products of the People's Republic of China Pursuant to the President's February 1, 2025 Executive Order Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,038, 9,040 (CBP Feb. 5, 2025).

16.    CBP reiterated these requirements in its second notice dated February 12, 2025. *Amended Notice of Implementation of Additional Duties on Products of the People's Republic of China Pursuant to the President's February 1, 2025 Executive Order Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,431 (CBP Feb. 12, 2025).

17.     *Executive Order 14228 of March 3, 2025*, 90 Fed. Reg. 11,463 (Mar. 7, 2025), modified *Executive Order 14195*, to increase the IEEPA tariff from 10 percent to 20 percent but left the remainder of *Executive Order 14195* unchanged.

18.     CBP published its implementation of *Executive Order 14228* on March 6, 2025. *Further Amended Notice of Implementation of Additional Duties on Products of the People's Republic of China Pursuant to the President's Executive Order 14195, Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,426 (CBP Mar. 6, 2025). There, CBP noted that the rate of duty had increased to 20 percent but reiterated that the "exception for goods that were in-transit before February 1, 2025 is time limited . . . as provided in HTSUS heading 9903.01.23, and will only apply to goods entered for consumption, or withdrawn from warehouse for consumption, on or after 12:01 a.m. eastern standard time on February 4, 2025, and before 12:01 a.m. eastern standard time on March 7, 2025." *Id.*

19.     Lastly, in CSMS No. 64347680, dated March 7, 2025, CBP informed the public that "[a]s of March 7, 2025, the temporary exclusion from the additional ad valorem IEEPA duties in place for in-transit shipments has ended. Consequently, HTS 9903.01.23 is no longer available for merchandise entered for consumption, or withdrawn from warehouse for consumption, after 12:01 a.m. ET on March 7, 2025."

20.     The six entries all left the port of origin on January 9, 2025, before February 1, 2025, and entered the United States on March 5, 2025, before CBP's March 7, 2025, expiration date. And each entry summary declared the merchandise classified under HTSUS subheading 9903.01.23. Intcomex thus complied with the President's and CBP's requirements to certify entitlement to IEEPA tariff-free treatment.

21.     Although the six entries were loaded onto a vessel at the port of loading before February 1, 2025 and were entered for consumption before March 7, 2025, CBP issued duty bills to Intcomex seeking payment of the 20 percent IEEPA tariff.

22.     Intcomex submitted timely protests establishing entitlement to the in-transit exclusion from the IEEPA tariff.  Indeed, in each protest Intcomex identified the "key facts" supporting entitlement to the exclusion: (1) "The goods were exported and the vessel departed China on January 9, 2025"; (2) "The bill of lading and carrier records confirm timely departure"; (3) "No transshipment, rerouting, or modification occurred after export"; (4) "The shipment[s] arrived in Miami, Florida on March 5, 2025, and w[ere] properly entered" on that date.

23.     In support of those "key facts" Intcomex provided CBP with bills of lading showing the January 9, 2025, departure date, commercial invoices, CF 7501 entry summaries establishing the January 9 export and March 5 entry date, and the vessel/carrier itinerary confirmation further establishing the vessel's departure and arrival dates.

24.     CPB did not dispute the accuracy of the "key facts" or the authenticity of the supporting evidence. Rather, CBP denied the protests, asserting only that "[t]he determining date is the date the goods are entered for consumption or withdrawn from warehouse for consumption. Not the date when the good left the foreign port or in-transit . . ." (citing 19 C.F.R. § 141.68). CBP nowhere explained why it was treating merchandise that entered the United States *before* the March 7 cutoff date as if it were merchandise that entered *on or after* the cutoff date.

### COUNT I – CBP WRONGLY REJECTED INTCOMEX'S CLASSIFICATION OF THE SIX ENTRIES AS SUBJECT TO THE IN-TRASNIT EXCLUSION

25.     Plaintiff incorporates and re-alleges paragraphs 1 through 24 as if fully set forth in this paragraph.

26.    Merchandise loaded onto a vessel at the port of loading before February 1, 2025, and entered for consumption before March 7, 2025, is classifiable under HTSUS subheading 9903.01.23, as IEEPA-tariff free under the in-transit exclusion.

27.    Each of the six entries was loaded onto a vessel at the port of loading before February 1, 2025 and entered for consumption before March 7, 2025.

28.    Intcomex further complied with CBP's regulatory requirement by "certify[ing] to CBP that the goods so qualify [for the in-transit exclusion] by declaring new HTSUS heading 9903.01.23" on its CB 7501 entry summaries. 90 Fed. Reg. 9,038.

29.    Accordingly, Intcomex met both the substantive and procedural requirements for the six entries to be classifiable under the in-transit exception to the IEEPA tariff at HTSUS subheading 9903.01.23, and CBP wrongly failed to afford the six entries treatment under HTSUS subheading 9903.01.23.

## <u>REQUEST FOR JUDGMENT AND RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment overruling the Port of Miami's denial of Plaintiff's protests and ordering CBP to reliquidate the subject entries under HTSUS heading 9903.01.23, with a refund of duties, plus interest as appropriate. Plaintiff also requests the award of attorney fees and any such other and further relief as the Court deems appropriate and just.

Respectfully submitted,

/s/ STEPHEN C. TOSINI
Law Office of Stephen Tosini
1717 K St. N.W. rm. 900
Washington, DC 20006
tel.: (202) 893-0496
email: stephen.tosini@importdefense.com

OF COUNSEL:
PETER QUINTER
Gunster, Yoakley & Stewart, P.A
600 Brickell Avenue, Suite 3500
Miami, FL 33131
tel.: (305) 376-6016
email: pquinter@gunster.com

Attorneys for Plaintiff